UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

APOTHECARY DEVELOPMENT CORPORATION, LARRY G. HEINE and SUSAN K. HEINE,

Plaintiffs,

v. Case No: 2:10-cv-392-FtM-38DNF

CITY OF MARCO ISLAND FLORIDA and THOM CARR,

Defendants.
_________________________________/

**ORDER[1]**

This matter comes before the Court on Defendant City of Marco Island Florida and Defendant Thom Carr's Motion for Final Summary Judgment (Doc. #110) filed on November 1, 2013. Defendants filed a Notice of Supplemental Authority on November 6, 2013. (Doc. #114). Plaintiff Apothecary Development Corporation, Plaintiff Larry Heine, and Plaintiff Susan Heine responded with a Memorandum in Opposition (Doc. #124) filed on December 16, 2013. This matter is now ripe for review.

**Facts**

Apothecary Development Corporation doing business as Island Drug was a pharmacy store located within the Marco Town Center Mall in Marco Island, Florida. (Doc.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

#110-3, at 4; Doc. #110-3, at 19; Doc. #110-16, at 11). Larry Heine and Susan Heine owned Island Drug equally. (Doc. #110-3, at 5). Larry Heine served as President and CEO of Island Drug. (Doc. #110-3, at 7). In addition, Larry Heine, who is a licensed pharmacist in the State of Florida, served as its head pharmacist from 2006 to 2012. (Doc. #110-3, at 5). Susan Heine completed payroll and accounting duties for Island Drug and served as one of its licensed pharmacy technicians. (Doc. #110-3, at 6, 8, 21).

Island Drug dispensed pharmaceutical drugs to its patrons for several years. Island Drug specifically dispensed controlled II substances such as but not limited to oxycodone related products from 2009 to 2012. (Doc. #110-3, at 15). Island Drug sold a lot of oxycodone products to its customers. For example, in 2010 alone, Island Drug dispensed over 1,000,000 controlled II substance products. (Doc. #110-3, at 23).

Island Drug received its pharmaceutical products from distribution companies. Some of these distribution companies investigated Island Drug and found Island Drug's practices to be suspicious. For example, Associated Pharmacies, Inc. found Island Drug was excessively purchasing pain medicine in the form of oxycodone. (Doc. #110-13, at 9). One investigator discovered Island Drug was not complying with federal law when it was filling prescriptions for customers. (Doc. #110-14, 18).

Due to Island Drug's suspicious activity, pharmaceutical distributors began terminating drug supplies to Island Drug. (See e.g., Doc. #110-3, at 9). H.D. Smith, for example, terminated its supply of drugs to Island Drug. (Doc. #110-11, at 3). On September 30, 2011, Cardinal Health decided to terminate its sales of controlled substances, specifically controlled II through controlled V, to Island Drug. (Doc. #110-12, at 12). On October 5, 2011, Associated Pharmacies, Inc. decided to terminate its sales

of controlled substances, specifically controlled II through controlled V, to Island Drug. (Doc. #110-13, at 8-9).

Neighboring businesses in the Marco Town Center Mall independently had concerns about Island Drug and the types of customers it was drawing to the area. For example, West Marine, a store that was located near Island Drug, grew concerned when different and suspicious individuals began shopping at the Marco Town Center Mall with more frequency. (Doc. #110-15; Doc. #110-16, at 5). These individuals were suspicious because they appeared to be under the influence, appeared to be loitering, and appeared to be experiencing health complications like overdoses within the shopping mall area. (Doc. #110-15, at 6, 8, 10, 13; Doc. #110-16, at 4, 5). Johnathan Andrews, who worked at the Marco Island West Marine store, called the Marco Island Police Department about five or six times himself; and other employees of West Marine also called the Marco Island Police Department in response to suspicious activities. (Doc. #110-15, at 12). When West Marine called about an issue in the Marco Town Center Mall, the Marco Island Police Department would often respond by coming to the location. (Doc. #110-15, at 17). Johnathan Andrews recalls typically only one police car would quickly come to the area. (Doc. #110-15, at 16, 17). The West Marine store also experienced an increase in theft issues and found some possible drug paraphernalia within its store in 2010. (Doc. #110-15, at 10, 7, 18; Doc. #110-16, at 7, 10). Patrons of West Marine also noticed the changes. (Doc. #110-15, at 8; Doc. #110-16, at 6). Other stores within the Marco Town Center Mall such as Georgie's & The Shoe Resort, Georgie Doll, and Beachworks noticed similar issues. (Doc. #110-17; Doc. #110-18; Doc. #110-19; Doc. #110-26, 11-12).

Pursuant to the phone calls by the neighboring businesses in Marco Island and tips by individuals, police began patrolling the Marco Town Center Mall with more frequency. (Doc. #110-15, at 12; Doc. #110-20, at 17-18; Doc. #110-26, at 12). There were complaints that Island Drug was a place where individuals could receive their pain pill prescriptions cheaply and easily. (Doc. #110-20, at 10; Doc. #110-26, at 11-12). There were also complaints about illegal drug deals and illegal drug use in the Marco Town Center Mall. (Doc. #110-20, at 18). There was evidence that individuals obtained their prescription drugs fraudulently. (Doc. #110-20, at 7). An undercover detective for the Collier County Sheriff's Office even observed what appeared to be a hand-to-hand drug sale and accordingly arrested the individuals involved. (Doc. #110-20, at 20; Doc. #21). General patrolling of the Marco Island area, resulted in Marco Island police officers observing overdoses and finding pharmaceutical pills, like oxycodone, in cars during traffic stops and arrest procedures. (Doc. #110-26, at 10, 19).

On June 9, 2010, two Marco Island police officers, Chief Tom Carr and Captain Baer, received a request for back up in the Marco Island Town Center. (Doc. #110-26, at 12). After arriving at the scene, Chief Carr and Captain Baer entered Island Drug. (Doc. #110-3, at 12, 17; Doc. #110-26, at 14). Meanwhile, other police officers and their vehicles were settled in the Island Drug parking lot. (Doc. #110-3, at 17-18). Larry Heine and Chief Carr had a brief conversation inside the store. (Doc. #110-3, at 17). The Parties recall the brief conversation differently.

According to Larry Heine, Chief Carr expressed to Larry Heine that Island Drug should stop filling prescriptions for patrons that lived in the Fort Lauderdale and Miami area. (Doc. #110-3, at 17). Larry Heine assured Chief Carr that Island Drug was not filling

prescriptions from these two cities. (Doc. #110-3, at 17). Larry Heine admits Chief Carr did not state that he was going to shut down Island Drug. (Doc. #110-3, at 23). At some point Chief Carr exited Island Drug and Larry Heine did the same. (Doc. #110-3, at 18). Larry Heine allegedly asked Chief Carr a question but did not receive a response. (Doc. #110-3, at 19). Larry Heine estimates that this visit from the Marco Island police officers and Chief Carr lasted no longer than 30 minutes. (Doc. #110-3, at 20).

To the contrary, Chief Carr estimates this incident occurred no longer than three minutes. (Doc. #110-26, at 14). Chief Carr recanted the conversation to be one where he asked Larry Heine if he knew what was going on outside in the Marco Town Center Mall and that there was a problem being caused by the number of pills that he was providing to customers. (Doc. #110-26, at 14). In addition, Larry Heine explained to Chief Carr how he took the prescriptions only from individuals living in Collier County so long as they had a driver's license or identification. (Doc. #110-26, at 14). Upon an inquiry of whether individuals from the east coast of Florida were filling their prescriptions at Island Drug, Larry Heine replied no. (Doc. #110-26, at 14-15). When Chief Carr and Captain Baer left Island Drug, Larry Heine followed the two and put his arm around Chief Carr. (Doc. #110-26, at 15). Larry Heine then allegedly stated something like, "your problem is not with me. It's with the doctors giving these prescriptions." (Doc. #110-26, at 15). In response, Chief Carr stated his problem was Marco Island rather than the doctors on the east coast of Florida. (Doc. #110-26, at 15). Chief Carr thinks he told Larry Heine that he would like him to stop selling to certain individuals. (Doc. #110-26, at 15).

Chief Carr stated that he did not suspect Plaintiffs of violating any rules or laws. (Doc. #110-26, at 16). In addition, Chief Carr did not come up with a plan to deal with the

Island Drug issue. (Doc. #110-26, at 16). Chief Carr, however, did tell police officers to patrol the Marco Town Center Mall more often. (Doc. #110-26, at 16).

Chief Carr and Captain Baer returned to Island Drug one other time. (Doc. #110-26, at 16-17). They did so to respond to a 911 phone call and hang up. (Doc. #110-26, at 16-17). When they arrived at Island Drug, those at Island Drug stated everything was fine at the store. (Doc. #110-26, at 17).

Patrons of Island Drug also encountered Marco Island and Collier County law enforcement. (See e.g., Doc. #124-10; Doc. #124-11). For example, Jeffrey Cavanaugh, a patron of Island Drug was questioned by police after picking up a prescription from Island Drug. (Doc. #124-8). This particular patron was not arrested but was given a written ticket for an expired license. (Doc. #124-8, at 8-9). Cavanaugh admitted that he would use Island Drug for services again but would be anxious about returning to the store if police officers were outside of the establishment because of this occurrence. (Doc. #124-8, at 12). On June 9, 2010, another individual, Michelle Meyer, encountered law enforcement after purchasing a prescription prescribed by a doctor in Fort Lauderdale. (Doc. #124-9, at 3-4). Law enforcement found that Meyer's friend was driving without a valid license; the car they drove to the pharmacy was towed. (Doc. #124-9, at 4). Another patron, Lorrie Smith, believes a law enforcement officer wrote her license plate number on a piece of paper. (Doc. #124-4, at 13). These individuals allege that the law enforcement officers used words and phrases such as: "freeze," "not move," "we will be here next time so be ready," "you can expect this every month you come here," and that they would arrest the patron if they "came back." (Doc. #124-8, at 5; Doc. #124-10, at 2). It is unclear from the record whether these encounters with law enforcement officers

occurred with the Marco Island Police Department or some other law enforcement organization.

Island Drug was eventually sold to CVS. (Doc. #110-3, at 15-16). When CVS purchased Island Drug, Larry Heine and Susan Heine retired. (Doc. #110-3, at 50). Larry Heine states they sold the business and retired due to the pressure from their children to do so. (Doc. #110-3, at 15).

On June 14, 2013, Plaintiffs filed a Third Amended Complaint against Defendants pursuant to Title 42 U.S.C. § 1983 and Title 28 U.S.C. § 1343. (Doc. #94). The Third Amended Complaint contains six claims that allege Defendants denied Plaintiffs their substantive due process rights as guaranteed under the Fourteenth Amendment. (Doc. #94). Plaintiffs support this assertion by alleging the general public was given the false impression that Plaintiffs were engaged in unlawful activity and accordingly Plaintiffs' reputation declined. (Doc. #94, ¶14a). Plaintiffs also allege existing customers were deterred from Plaintiffs' business because of police harassment. (Doc. #94, ¶14b). Plaintiffs allege Defendant Marco Island ratified this unlawful behavior and is liable for the acts and conduct of Defendant Carr as the individual who has the policy making authority with regard to the law. (Doc. #94, ¶16). Accordingly, Plaintiff Island Drug asserts it has been damaged through the loss of business revenue, business customers, market share, and reputation. (Doc. #94, ¶17). Plaintiffs seek compensatory damages, punitive damages, costs of litigation, and reasonable attorney's fees. (Doc. #94). Defendants filed this instant Motion for Summary Judgment on November 1, 2013. (Doc. #110). Plaintiffs filed a response in opposition on December 16, 2013. (Doc. #125).

**Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc.,

975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**Discussion**

The substantive due process component of the Due Process Clause protects fundamental rights created by the United States Constitution that are "implicit in the concept of ordered liberty." Behrens v. Regier, 422 F.3d 1255, 1264 (11th Cir. 2005); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (citing Palko v. Connecticut, 302 U.S. 319, 325 (1937)); Bailey v. Town of Lady Lake, Fla., No. 5:05-cv-464-Oc-10GRJ, 2007 WL 677995, at *7 (M.D. Fla. 2007). Courts analyze claims brought pursuant to substantive due process in two steps. First, courts consider whether a plaintiff has alleged a deprivation of a right that is "deeply rooted in this Nation's history and tradition, and implicitly in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Wallace v. City of Tarpon Springs, No. 8:05-CV-979-T-EAJ, 2007 WL 128836, at *10 (M.D. Fla. Jan. 12, 2007) (citing Williams v. Attorney Gen. of Ala., 378 F.3d 1232, 1239 (11th Cir. 1994), cert. denied, 543 U.S. 1152 (2005)). Second, courts require a careful description of the asserted fundamental right in which a plaintiff must demonstrate that the government action was conscience-shocking. Wallace, 2007 WL 128836, at 10 (citing Reno v. Flores, 507 U.S. 292, 302 (1993); Tinker v. Beasley, 429 F.3d 1324, 1327 (11th Cir. 2005); County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

Plaintiffs do not clearly articulate what right they were deprived of in the Third Amended Complaint. At best, Plaintiffs allege their reputation was harmed as a lawful business. The Eleventh Circuit has held injury to a reputation alone is insufficient to constitute a deprivation of a liberty or property interest protected under the Fourteenth Amendment. Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005); Goulding v. Feinglass, 811 F.2d 1099, 1103 (7th Cir. 1987), cert. denied, 482 U.S. 929 (1987) ("the infliction by the government of a stigma on one's reputation, without more, does not infringe upon a liberty interest protected by the Constitution's due process safeguards."); c.f. College Sav. Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 675 (1999) ("The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment."). In addition, a plaintiff's mere feeling of being stigmatized in the community is not enough to successfully allege his rights have been infringed. See generally, Goulding v. Feinglass, 811 F.2d 1099, 1103 (7th Cir. 1987) ("Even though [Plaintiff] feels he may have been stigmatized by the investigations and statements allegedly made by the defendants, this does not amount to the deprivation of a liberty interests.").

Even if Plaintiffs intended to allege their rights were violated because of a decline in their reputation in the Marco Island community, the record evidence demonstrates otherwise. For example, Georgie Doll, the owner of Georgie's Shoe Resort, stated Larry Heine and Susan Heine were honest people. (Doc. #110-18, at 5). Doll also stated Island Drug customers liked Larry Heine and missed him after he sold his business. (Doc. #110-18, at 9). Heidi Donato, who also worked at Georgie's Shoe Report, stated Larry Heine

and Susan Heine were "outstanding people." (Doc. #110-17, at 7). In addition, Island Drug patrons admitted they would return to that particular pharmacy to purchase their pharmaceutical products. (Doc. #124-8, at 12). Plaintiffs do not point to any record evidence showing their reputation was harmed. Thus, there is no material dispute. To the extent Plaintiffs intend to assert their rights were violated because of a decline in their reputation, alone or in conjunction with other rights such as employment, the Court finds this assertion in light of the law and facts fails.

Defendants contend Plaintiffs are attempting to assert a deprivation of their fundamental right to work. Plaintiffs support this assertion by responding to the motion for summary judgment by stating they are seeking redress "for the loss of freedom to work where they will, to follow a lawful calling and to pursue their livelihood… [which] threaten[ed] the loss of their business opportunities." (Doc. #124, at 15). Defendants argue this allegation and argument fails because there is no constitutional right in maintaining a business or earning a profit. Baltimore Air Transport, Inc. v. Jackson, 419 F.App'x 932, 937 (11th Cir. 2011). The Court agrees. Therefore, any assertion that Plaintiffs were denied their substantive due process rights because of the loss of maintaining a business or earning a profit fails. Id.

Also, the Due Process Clause undeniably protects property interest in pursuing the "common occupations or professions of life." Wallace, 2007 WL 128836, at *11 (citing Benigni v. City of Hemet, 879 F.2d 473, 478 (9th Cir. 1988) (quoting Schware v. Bd. of Bar Examiners, 353 U.S. 232, 238-39 (1957))); c.f. Helm v. Liem, 523 Fed.Appx. 643, 645 (11th Cir. 2013) (there is no fundamental right to work in a specific profession). Employment rights are state-created rights and are not "fundamental rights" created by

the Constitution. McKinney v. Plate, 20 F.3d 1550, 1556 (11th Cir. 1994)). Accordingly, employment rights are only protected under the procedural, rather than substantive, component of the Due Process Clause. Id. Here Plaintiffs brings this suit against the Defendants under the substantive due process clause and to the extent Plaintiff brings this matter pursuant to employment rights, this matter fails.

Moreover, the record does not show that Defendants actions were conscious shocking either. For instance, the Court does not find Plaintiffs' argument that their pursuit of livelihood was deprived to be persuasive. The record reveals Plaintiffs voluntarily ended their profession. After all, Plaintiffs stated reason for doing so was due to the longtime pressure of their children. (Doc. #110-3, at 15). Larry Heine also stated he could work as a pharmacists today if he wanted to. (Doc. #110-3, at 85). This evidence directly contradicts any notion that Defendants deprived the Plaintiffs of their rights to a livelihood. See generally, Goulding, 811 F.2d at 1103 (finding that the plaintiff was not foreclosed from practicing in his profession and holding the plaintiff was not deprived of a liberty interest).

The Court also finds there is no evidence on the record that Defendants created a systematic operation designed to harass Plaintiffs and others. The record reveals law enforcement officers were aware that Island Drug drew a crowd of individuals that potentially used drugs illicitly, loitered, and made disturbances in Marco Town Center Mall. The Marco Island Police Department was called on several occasions to address issues at the Marco Town Center Mall generally. Further, the Marco Island Police Department had a valid purpose in halting or deterring criminal conduct. Wallace, 2007 WL 128836 at *11. The Marco Island Police Department was there to address reported

criminal activity and perhaps deter criminal activity. The record does not show Defendants, and other law enforcements, focus on the Marco Town Center Mall was irrational, arbitrary, a part of a custom or policy, or to be conscious shocking that Defendants' actions violated Plaintiff's substantive due process rights.

There is no evidence that Defendants harassed Plaintiffs. Even though police officers parked in the Marco Town Center Mall parking lot and there is evidence police patrolled the surrounding area, the Court does not find this to be "harassing." See George's Place, LLC v. Smith, No. 3:11-cv-1096-J-37JBT, 2012 WL 360161, at *7 (M.D. Fla. Feb. 2, 2012) ("Although some deputies allegedly park 'within sight of the bar, while other patrol cars cruise near the vicinity of the bar' … the Court does not find such activity to be necessarily 'harassing", in and of itself."). Even though Chief Carr may have stated to Larry Heine that he wanted him to stop selling certain prescriptions to other individuals, this possible statement does not show Chief Carr wanted Island Drug to be shut down. Instead, the evidence shows otherwise. Chief Carr, other businesses in the Marco Town Center Plaza, and patrons did not have a campaign against Island Drug, Larry Heine or Susan Heine. Instead there was an issue with some of the individuals that used Island Drug for its services who were not from the Marco Island area. An increase in drugs, loitering, medical issues, and thefts are all viable issues to reasonably concern anyone let alone law enforcement. The record does not demonstrate that the Marco Island Police Department overstepped their authority in a shockingly conscious way that infringed on Plaintiffs rights.

Although it is unclear from the record which law enforcement agency asked Island Drug patrons questions, pulled them over for traffic violations, and the like, the Court finds

these incidences do not amount to harassment. See e.g., George's Place, LLC v. Smith, No. 3:11-cv-1096-J-37JBT, 2012 WL 360161, at *7 (M.D. Fla. 2012) (finding summary judgment was warranted because there was no evidence police told patrons not to return to the establishment and there was no evidence that police pulled patrons over for no reason; despite police parking within sight of the plaintiff's establishment); c.f. San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 703 (5th Cir 1991) (finding summary judgment was not warranted because there was evidence that police repeatedly harassed patrons, threatened to arrest patrons if they did not leave the plaintiff's establishment, prevented patrons from entering the parking lot of the plaintiff's establishment, and stopped vehicles in route to the plaintiff's establishment by instructing them to turn the car around). There is no evidence that Defendants threatened to arrest patrons if they returned to Island Drug. Defendants took issue with patrons for their improper behavior, such as driving without valid driver's licenses or having others purchase pharmaceutical drugs for them. This is distinctly different than telling patrons to not return to Island Drug completely. Even the alleged language used by law enforcement officers, such as "freeze," "not move," "we will be here next time so be ready," and "you can expect this every month you come here," do not amount to harassment or a substantive due process violation. Further, the alleged remark that one patron would be arrested if they "came back" is misleading. The context of the affidavit reveals that law enforcement was concerned about this patron driving while under the influence and without a valid driver's license. In fact, during this conversation this patron was given a ticket for his expired license. Again, this does not amount to harassment of Plaintiffs or a substantive due process violation of Plaintiffs.

The mere presence of law enforcement in the vicinity of Island Drug is not enough to establish harassment or a deprivation of rights either. This is especially true since law enforcement was somewhat frequently called by other businesses and individuals within the Marco Town Center Mall to respond to suspicious activity. The record does not reveal law enforcement were arresting, collecting potential evidence, pulling people over, or questioning without probable cause. The record shows the arrests that were made and the tickets that were issued around the Marco Town Center Mall area were executed properly. Plaintiff points to nothing in the record to support that Defendants acted in an egregious manner.

The Court finds Plaintiffs have not articulated a violation of substantive due process. In addition, the Court finds the record evidence demonstrates Defendants did not harass Plaintiffs, Defendants did not cause Plaintiffs reputation to decline, Defendants did not act so egregiously, and Defendants did not create a systemic policy that violated Plaintiffs' constitutional rights. There is no material dispute even in viewing the facts in favor of Plaintiffs. Summary judgment is due to be granted in favor of the Defendants.

Since the Court finds Defendants are entitled to summary judgment on Plaintiffs' substantive due process claims, it is not necessary for the Court to address the issue of whether any of the Defendants are entitled to qualified immunity on these claims. Wallace, 2007 WL 128836, at *11 (citing Fla. Country Clubs, Inc. v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., 98 F.Supp.2d 1356, 1364 (M.D. Fla. 2000)).

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Final Summary Judgment (Doc. #110) is **GRANTED**.

2. All pending motions are **DENIED as moot**.
3. The Final Pretrial Conference set for January 27, 2014 at 9:00 a.m. is hereby CANCELLED.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of January, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record